UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                                                         :

ZONGTEX INTERNATIONAL                 :
CORPORATION,                                       :
                               Plaintiff,      :          14-CV-5780 (JPO)
                                                       :
                        -v-                       :          OPINION AND ORDER
                                                       :
JESE APPAREL LLC, SILVERWEAR-USA, and:
JAY WEITZMAN,                                        :
                                  Defendants. :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Defendants have asked the Court to sanction Tiffany Ma, counsel for Zongtex, for (1) her improper allegation that Defendants are "racist" (*e.g.*, Dkt. No. 12, Plaintiff's Memorandum of Law, at 13); (2) her improper allegations that Defendants are defrauding other companies, for which allegation Ma offers no factual support (*id.* at 7, 9, 13, 16); and (3) her improper reference to religious and ethnic identity (*id.* at 9). On December 19, 2014, the Court held a hearing, at which it heard from Ma and Defendants' counsel regarding this matter. Ma then sought and was granted permission to file a supplemental written submission, which she filed on January 4, 2015. (Dkt. No. 25.) For the reasons that follow, Defendants' request for sanctions is reluctantly denied.

I.

      The Court has the inherent power to sanction parties and counsel in appropriate circumstances. "It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution . . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotations and brackets omitted). Accordingly, "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence,

1

respect, and decorum." *Id.* (internal quotations omitted).  Although the Federal Rules of Civil Procedure provide certain procedural protections attendant to the imposition of sanctions, the Court is not strictly limited to those rules in the exercise of its inherent power.  *E.g., id.*  Nonetheless, because the scope of the inherent power is so broad, courts must "exercise caution" when using it.  *Id.* at 50.  An inherent power sanction requires a showing of "bad faith."  *Id.* at 46.

II.

Throughout her memorandum of law, Ma accuses Defendants of failing to pay for the purchased goods because Zongtex is an Asian company.  (*See, e.g.*, Plaintiff's Memorandum, at 1-2 ("If this were an employment relationship, it would be screaming of Title VII of the Civil Rights Act violations for discrimination and defendants were completely influenced by the fact that Zongtex is an Asian company . . . .  Companies like JESE and executives like Weitzman must be made to understand that foreign people can be good people, they can be smart people, they can be honest people, and their lives and right to be treated fairly in business should not be influenced by the color of their skin . . . .").)  Similarly, Ma accuses Defendants of being "racist" and of defrauding other unrelated companies on the basis of their national origins.  (*Id.* at 7, 9, 13, 16.)

Ma refers to the fact that JESE employees and officers are Jewish.  (*Id.* at 9 ("Defendants utilized Chinese and Asian employees to earn the trust of Zongtex (while senior management were all American or Jewish) . . . .").)  Although JESE is described in the Complaint as an American company headquartered in New York, the Complaint contains an oblique and unsupported statement that the "head office" of JESE is in Israel.  (Complaint ¶¶ 8, 19.)  Elsewhere in her brief, Ma declares that anyone who "has any familiarity with the garment district" would recognize her "story" about "chea[ting]" and "st[ealing]."  (Plaintiff's

2

Memorandum, at 1-2.)  New York's garment district has a longstanding reputation as a center of Jewish business.

In her written submission, Ma notes that she has not been given the benefit of Rule 11's safe-harbor provision and asserts that, had she been given the opportunity to withdraw the challenged statements, she would have.  She nonetheless contends that her statements are not sanctionable, although she "apologize[s] for [their] offensive nature to Defendants, Defendants' counsel and the Court."  (Dkt. No. 25, Brief in Opposition to Sanctions, at 7.)  She proceeds to argue that she has a good-faith basis to believe that the Defendants are racists because it is her client's sincere belief that they are racists.  And she argues that emails submitted in connection with Defendants' request for sanctions evince fraud on other companies.  Having considered Ma's submissions on these two issues, the Court is persuaded that, although she was grossly mistaken in making these allegations, she did not do so in bad faith.

Ma's references to Jewish identity, however, are barely explained.  Her half-hearted attempt to justify these references is indicative of bad faith.  "With respect to Weitzman's religious and ethnic identity," she writes, "we submit that it was made in a parenthetical on one page of Plaintiff's 19 page memorandum and was not intended to trigger Weitzman's religious beliefs."  (*Id.*)  Later on, she explains that

> with respect to the reference to Defendants' religious and ethnic identity, . . . [i]n the one parenthetical reference in Plaintiff's Memorandum as to senior management of Defendants being American or Jewish, we did not make specific reference to Jay Weitzman's ethnicity or religion (the focus being on the corporate defendants).  In the context described within the parenthetical, the reference was clearly to contrast Defendants' Chinese and Asian employees who had similarities in culture and language to Plaintiff but yet did not have authority to cause Defendants to pay for goods shipped.

(*Id.* at 9.)  She offers no further explanation for her conduct.

3

At oral argument, the Court asked Ma how she knew that any officer of the corporate Defendant was Jewish. In response, she produced an email in which Weitzman mentioned that he was traveling to Israel. The Court asked Ma whether she understood that people who are not Jewish sometimes travel to Israel and that being Jewish is not the same thing as being Israeli. She confirmed that she understood the distinction and eventually admitted that she could not identify how she knew that JESE officers are Jewish. Nonetheless, in her subsequent written submission, she argues that her reference to Jewish identity was proper because it was "clearly to contrast Defendants' Chinese and Asian employees" (*id.*), and contends that she was not actually referring to Weitzman, but rather was referring to the corporate defendants (*id.*).

Ma is correct that, in context, it is clear that she meant to distinguish "American or Jewish" people from "Chinese and Asian" people. (*Id.*) But she has offered no reason to believe that it is pertinent or acceptable for her to make this distinction. Why is it relevant that they are Jewish? Because she persists in using the term "Jewish"—even in her papers in response to a request that she be sanctioned for doing so—it is crystal clear that she did not mean "Israeli" and she did not mean to reference anyone's citizenship or nationality. Instead, she "trigger[ed] Weitzman's religious beliefs." (*Id.*) And her contention that she did not mean to reference *Weitzman*'s identity is both irrelevant and flatly contradicted by her own evidence. In connection with the motion for sanctions, she submitted the declaration of Stanley Chen, President of Zongtex, who declares: "I know Jay Weitzman, the president of JESE Apparel LLC, to be Jewish because his staff by the name of 'Jenny' told me at the end of 2013 or the beginning of 2014." (Dkt. No. 25, Exhibit 1, Declaration of Stanley Chen, at 1.) Still, Ma contends that she "did not make specific reference to Jay Weitzman's ethnicity or religion (the focus being on the corporate defendants)." (Brief in Opposition to Sanctions, at 9.) Notwithstanding the fact that a corporation can have religious beliefs, *see Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct.

4

2751, 2768 (2014), Ma was clearly referring to Weitzman's religious beliefs. If any additional evidence of bad faith were needed in the first instance, Ma has supplied it.

III.

By making these inappropriate and irrelevant statements, Ma has failed to serve her client and has embarrassed herself. Even setting aside the other troubling aspects of her brief, her references to Jewish identity are outrageous. This type of conduct does not befit a member of the bar. *See* N.Y. Rules of Prof'l Conduct, Rule 3.1(b)(2) (prohibiting attorney conduct that "serves merely to harass or maliciously injure another"); *id.* Rule 3.4(d)(1) (prohibiting an attorney from "stat[ing] or allud[ing] to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence"). Courts have approved of non-monetary sanctions where briefs contain "invective." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1321 (11th Cir. 2002).

Although the Court finds that Ma's conduct is properly sanctionable, it concludes that a sanction would be inappropriate at this time because Ma has offered to withdraw the offending portions of her memorandum of law. She is hereby ordered to do so. Ma is admonished that if she persists in this type of conduct, she will be subject to sanctions, including, but not limited to, monetary penalties.

The Clerk of Court is directed to strike the document at Docket No. 12. Counsel for Plaintiff shall file a revised version of Plaintiff's Opposition the Defendants' motion to dismiss by January 15, 2015.

SO ORDERED.

Dated: January 8, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge